FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2005 DEC 23 A 11: 13

U.S. DISTRICT COURT
NEW HAVEN, CT

| | | |
|---|---|---|
| T. BARRY STEPHENS | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:01 CV 2267 (JBA) |
| v. | : | |
| TES Franchising, L.L.C., a CT LLC.<br>The Entrepreneurs' Source, Inc., a Delaware Corp.<br>Terry Powell, a resident of Southbury, CT | : | |
| Defendants | : | December 22, 2005 |

**PLAINTIFF STEPHENS' REPLY MEMORANDUM TO DEFENDANTS'
OPPOSITION TO PLAINTIFFS' MOTION TO VACATE ARBITRATION AWARD**

**I. PRELIMINARY.**

Plaintiff Stephens files this Reply Memorandum to Defendants' Opposition to Stephens' Motion to Vacate Arbitration Award. The court should note that Stephens has requested vacatur only to the extent the award relates to Stephens' counterdemand, not to the entire award.

**II. THE LAW AND ARGUMENT.**

A. *The Arbitrator Manifestly Disregarded the Law in Rendering the Award With Respect to CUTPA.*

The "manifest disregard of the law" doctrine requires vacatur with respect to Stephens' CUTPA claim because the well-defined, explicit and clearly applicable decisions of the Connecticut courts interpreting CUTPA hold that the victim need not prove individual reliance. Counsel for all parties agreed as to that interpretation. Under the circumstances, the arbitrator was well aware of it. *Halligan v. Piper Jaffray, Inc.*, 148 F.3rd 197, 203-204 (2nd Cir. 1998);

*Goldman v. Architectural Iron Co.*, 306 F.3rd 1214, 1216 (2d Cir. 2002); *GMS Group, LLC, v. Benderson*, 326 F.3rd 75, 78 (2d Cir. 2003).

TES tried to create an exception to the decisions cited by the parties by stating that an individual victim must prove her/his own individual reliance. TES relies entirely on the following "logic," but without presenting any supporting authorities. It begins by stating:

> * * * no damages can be awarded under CUTPA arising out of a misrepresentation unless the misrepresentation is found to be "material." The definition of material is that the misrepresentation must be of a kind to cause reliance. This issue, though briefed by the parties, was not mentioned at all in the arbitrator's award. The arbitrator never reached the question of whether Stephens had reasonably relied upon misrepresentations made by the Defendants, *because he found that no material misrepresentations had been made.* (Emphasis supplied.)

Defendant's (sic) Memorandum in Opposition to Plaintiff's Motion to Vacate Arbitration Award filed in this action ("TES Memo in Opposition"), p. 4. TES, however, argued (TES Post-Hearing Brief, Ex. 9, p. 30) that "the courts have devised a proxy for requiring individual showings of reliance." In attempting to support the argument that no material misrepresentations were made, TES correctly stated the law, as follows:

> * * * In the words of the Connecticut courts "[a]n act or practice is deceptive if three conditions are met. ''First, there must be a representation, omission, or other practice likely to mislead *consumers*. Second, the *consumers* must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material – that is, likely to affect consumer *decisions* or conduct...." *Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990) cert. denied, 498 U.S. 1088 ..." Quoted at *Southington Savings Bank v. Rodgers*, 40 Conn. App. 23, 28 (1995) and also at *Smith Field Associates, LLC v. Tolland Bank*, 86 Conn. App. 14, 28 (2004).(Emphasis in text supplied.)

Particular note must be made of the repeated reference in *Caldor* to the plural of "consumer" and to the fact it referred to "consumer decisions" rather than to the decision of an individual consumer.

Particular note must also be made to the fact that, as stated in Stephens Post-Hearing Brief (Ex. 8, at p. 40),

> "* * * The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Suarez v. Sordo, 43 Conn.App. 756, 772, 685 A.2d 1144 (Conn.App. 1996); *cert denied* 240 Conn. 906, 688 A.2d 334 (1997).

TES not only doesn't cite any authority whatsoever for its "proxy" argument, it doesn't reconcile it with either (a) the references in *Caldor* to "consumers' or (b) how an individual may act as a private attorney general in behalf of other consumers if that individual must prove her/his own reliance. In determining materiality, the arbitrator must have, according to what all parties agreed were the well-defined, explicit and clearly applicable decisions interpreting CUTPA, considered all prospective purchasers of TES consultant franchises, not just Stephens. There are no other reasonable interpretations of CUTPA. *Success Systems, Inc. v. Maddy Petroleum Equipment, Inc.*, 316 F.Supp.2d 93, 99 (See Stephens Memorandum, pp. 11-12). He specifically stated in his award, however, that he considered only Stephens as an individual purchaser. The arbitrator apparently intentionally avoided use of the word "reliance." The clear intent of his language carving out Stephens because of his sophistication, etc., was to indicate that he determined that *Stephens* did not reasonably rely on the misrepresentations of TES. The situation, he very strongly inferred in paragraph 1 of the Award, may well be different, given the same misrepresentations and "fact patterns" with other purchasers of TES consultant franchises.

B. <u>Manifest Disregard and the Misstatement of Facts is Evidence of Both Manifest Disregard of the Law and Partiality. Restating Those Facts is Not an Attempt to Relitigate Them</u>

Stephens states certain *facts,* not just "evidence," in the bulleted paragraphs on pages 15

and 16 of, and elsewhere in, Plaintiff's Memorandum in Support of Plaintiff's Motion to Vacate Arbitration Award With Respect to Stephens' Counter-Demand" filed in this action ("the Stephens Memorandum"). The manifest disregard of those facts is most certainly evidence of both manifest disregard of the law and partiality. As Stephens previously argued, this court may consider the evidentiary record to determine whether there is any colorable basis to determine that the award was not based on manifest disregard of the law. (Stephen's Memorandum, pp. 16-17, citing *Wallace v. Buttar*, 378 F.3d 182, 193 [2d Cir. 2004].) Stephens urges that the same reasoning should be applied to determine whether there is any colorable basis that the award was not based on partiality. Misstating facts is most certainly evidence of partiality

TES has not offered any colorable basis whatsoever for the arbitrator's manifest disregard of the foregoing facts or for misstating in paragraph 13 of the Award that Stephens claimed he *"misunderstood* the intention of the TES franchise business (etc.)" (emphasis supplied). TES's only response to Stephens' claim regarding the arbitrator's misstatement was simply that "Stephens' testimony established without question that he did misunderstand the intention of the TES franchise business." Whether Stephens did, in fact, misunderstand TES's intentions, etc., is a factual determination within the province of the arbitrator, a finding of fact the arbitrator did not specifically make. But misstating Stephens' basic and very clear and explicit claim that the whole foundation of this dispute is TES's misrepresentations is evidence of partiality.

    C.    <u>TES Erroneously Stated That Stephens Acknowledged That Certain Representations Were not Made By TES.</u>

TES erroneously states that Section 24.01 of Stephens' Consultant Franchise Agreement and the TES UFOC delivered to Stephens by TES contain an acknowledgment by Stephens that

"no representation had been made to him about the franchised business not contained in certain documents * * * ," his TES Consultant Franchise Agreement and the TES UFOC delivered to him by TES. (TES Memo in Opposition, p. 9.) No language whatsoever stating such acknowledgment appears in either that consultant franchise agreement or that UFOC.

    D.    <u>Stephens Argued That the Award "Condones" Violations of Public Policy, Not that the Award Itself Violates Public Policy.</u>

TES misstated Stephens argument (see Stephens Memorandum, p. 21) that the award itself violates public policy. (TES Memo in Opposition, pp. 9-10.) Stephens argued only that the award condones the violation of public policy.

    E.    <u>TES's Argument That Connecticut Law Applies to Determine the Timeliness of the Filing of the Motion to Vacate is Erroneous. The Federal Arbitration Act is Clearly Applicable.</u>

TES relies on *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1395-96 (D.C.Cir.1995) for the proposition that the time limitation for filing a Motion to Vacate an Arbitration Award must be made within the time limits set by Connecticut General Statute Section 52-420 (thirty days) as opposed to the Federal Arbitration Act (FAA) Section 9-12 (ninety days).

*Ekstrom* however dealt with a contract which had but one choice of law provision within it. The parties there had provided that their agreement "shall be governed by and construed in accordance with the internal laws of the State of Connecticut." *Id.* at 1393. At issue was whether the FAA could preempt Connecticut law under those circumstances.

Furthermore, the *Ekstrom* holding that a general choice of law provision trumps the FAA has not been generally followed. In *Mastrobuono v. Shearson Lehman Hutton, Inc.,*

514 U.S. 52, 115 S.Ct., 1212, 131 L.Ed.2d 76 (1995), the Supreme Court does not prevent parties from deciding that a state's arbitration law applies; it only requires that such a choice is expressed unequivocally, and the parties in *Ekstrom* expressly agreed that Connecticut substantive arbitration law applied. There is no such clear choice here, rather the opposite seems clear: the FAA should apply to all aspects of arbitration, including the substantive rights of Plaintiff.[1]

Other courts of appeals which have considered these issues have concluded that "*Mastrobuono* requires that the intent of the contracting parties to apply state arbitration rules or law to arbitration proceedings must be explicitly stated in the contract and that under *Mastrobuono*, a general choice of law provision does not evidence such intent. *See Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir.2002) ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration."); *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 288- 89 (3d Cir.2001) ("[A] generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards."); *UHC Management Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir.1998) (finding general choice of law provision insufficient; court "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly

---

[1] Although *Ekstrom* was argued and decided after the Supreme Court issued its opinion in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct., 1212, 131 L.Ed.2d 76 (1995), *Mastrobuono* is never cited in *Ekstrom*. Moreover, one of the cases that the D.C. Circuit cites in *Ekstrom* to establish that the FAA did not pre-empt Connecticut law was a Second Circuit case whose holding was explicitly overruled by the Supreme Court in *Mastrobuono*. *See Fahnestock & Co. v. Waltman*, 935 F.2d 512, 517 (2d Cir.1991) (cited in *Ekstrom*, 68 F.3d at 1396), *overruled by Mastrobuono*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

clear"); *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926, 936 (6th Cir.1998) (rejecting general choice of law provision in absence of "indication that the parties intended to incorporate Ohio law to determine that the issue of fraudulent inducement should be adjudicated in a judicial forum"); *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 383 (4th Cir.1998) ("[T]he choice-of-law provision in the [agreement] is neither an unequivocal expression of the parties' intent to commit adjudication of timeliness defenses to the court, rather than to an arbitrator, nor, more generally, an unequivocal expression of the parties' intent to invoke Maryland, rather than federal, arbitration law."); *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir.1996) ("[T]he choice-of-law clause is not an unequivocal inclusion of a New York rule that requires the preclusive effect of a prior arbitration to be decided by the court."); *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 594 (1st Cir.1996) (general choice of law provision did not indicate parties' intent to apply state rule requiring a judicial determination of effect of relevant clause)." See *Jung v. Association of American Medical Colleges* 300 F.Supp.2d 119 (D.D.C., 2004).

In the present case, there are two choice of law provisions included in the Franchise Agreement:

> Section 20.01 - which provides that "All disputes and claims relating to" the agreement and "the rights and obligations of the parties ... will be settled by arbitration in accordance with the" FAA, and
>
> Section 22.01 - which provides that "this Franchise Agreement is to be construed and interpreted in accordance with the laws of the State of Connecticut."[2]

---

[2] Interestingly, in prior litigation in this matter regarding the interplay between these same two provisions, TES claimed that 22.01 was a "residual venue" clause, not designed to defeat the effect of 20.01.

Section 22.01 can only be interpreted as a general choice of law provision, hardly an unequivocal statement of the parties intent regarding the applicability of the C.G.S Section 52-420 especially where Section 20.01 seems to unequivocally state that "the rights" of the parties are governed by the FAA. "The Rights" of the parties would seemingly include the right to file a Motion to Vacate within the time frame allowed by the FAA.[3]

### III. CONCLUSION.

A. The well-defined, explicit and clearly applicable decisions of the Connecticut courts, as agreed by all parties, is that CUTPA victims need not individually prove reliance on misrepresentations. There is no authority whatsoever for requiring the victim in an individual action from proving reliance and there are no other reasonable interpretations. of CUTPA. The award carved out Stephens in requiring proof of reliance. This was a manifest disregard of the law that requires vacatur.

B. The arbitrator manifestly ignored and misstated facts, not merely interpretations of facts. Such evidence must be considered by the court in determining whether there is any colorable basis to determine whether the award was not based on manifest disregard of the law or the arbitrator's partiality.

C. TES erroneously stated that Stephens acknowledged that no representations were made to him not contained in his Consultant Franchise Agreement or in the UFOC delivered to him by TES. TES claims that such acknowledgment is fatal to Stephens claims. (Stephens disagrees with TES on this conclusion.) But there was no such acknowledgment.

---

[3]*Security Ins. Co. of Hartford v. Trustmark Ins. Co.* 283 F.Supp.2d 602, (D.Conn.,2003) is inapposite as it also dealt with an agreement with a single choice of law provision.

D.  The award condones violations of public policy, as expressed in the laws of Connecticut and/or Florida with respect to CUTPA, breach of fiduciary relationship, and the Florida Franchise Act.

E.  The three-month time limitation for filing a motion to vacate under the FAA is applicable to Stephens Motion to Vacate, not Connecticut law. Stephens timely filed his Motion to Vacate.

Respectfully submitted
By his attorneys

John Q. Gale            Mark J. Klein
Federal Bar #ct05206    Federal Bar #ct23210
GALE & KOWALYSHYN, LLC  MARK J. KLEIN, P.C.
363 Main Street, 4th Flooor  1102 Grand Blvd., Ste. 1102
Hartford, CT 06106      Kansas City, MO 64199-3471
Tele  (860) 522-8296    Tele  (816) 474-6137
Fax   (860) 522-8298    Fax   (816) 474-0207

## CERTIFICATE OF SERVICE

This is to certify that the foregoing reply memorandum was sent by facsimile and First Class Mail, USPS, on this date to the following:

Alec G. Sohmer, Esq.
LAW OFFICE OF ALEC SOHMER,

71 Legion Parkway, Ste. 23
Brockton, MA 02301

Scott C. Kern, Esq.
SCOTT C. KERN, ATTORNEY-AT-LAW, LLC
205 Church Street, Ste. 321
New Haven, CT 06510

December 22, 2005

Mark J. Klein, Esq./~~John Q. Gale,~~ Esq.