UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

T. BARRY STEPHENS,                    :
     Plaintiff,                       :
                                      :
v.                                    : Civil No. 3:01cv2267 (JBA)
                                      :
TES FRANCHISING, LLC, et al.,         :
     Defendants.                      :

   **Ruling on Plaintiff's Motion to Vacate Arbitration Award
   [Doc. # 40] and Defendant's Motion for Sanctions [Doc. # 46]**

    Plaintiff T. Barry Stephens ("Stephens") moves to vacate in part an arbitration award dated August 18, 2005, which found in favor of defendants TES Franchising, LLC, The Entrepreneurs' Source, Inc., and Terry Powell (collectively "TES"), on Stephens' counterdemand for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., the Florida Franchise Act, and the common law of fraud.  See Award of Arbitrator, Pl. Ex. to Mot. to Vacate Arbitration Award [Doc. # 40], Ex. 12.  For the reasons that follow, plaintiff's motion is denied.  Defendants move for sanctions against plaintiff on the ground that his partial motion to vacate contravenes the requirements of Rule 11, which also will be denied.

**I.   Factual and Procedural Background**

    In 2001 Stephens filed a complaint in this Court alleging the same claims -- fraud, CUTPA violations, and Florida Franchise Act violations -- that he later alleged in his arbitration counterdemand.  See Complaint [Doc. #1].  Defendants moved to

                                  1

compel arbitration, which motion was initially denied. See Stephens v. TES Franchising, 3:01cv2267 (JBA), 2002 WL 1608281 (D. Conn. July 10, 2002). After lengthy proceedings, including an interlocutory appeal that was subsequently withdrawn, this Court granted defendants' motion to compel arbitration and stay litigation. See Zaks v. TES Franchising, 2004 WL 1553611 (D. Conn. July 9, 2004).

In arbitration, plaintiff Stephens (the respondent in arbitration) contended that TES made six misrepresentations to him to induce him to purchase a TES franchise. Stephens asserted that he had purchased the franchise believing that he would become a business consultant matching clients to the best available franchise opportunities for them, and providing them with business development assistance. He alleged that when he attended the first training session he was surprised to discover that TES worked on behalf of only 117 specific companies to sell their franchises ("the franchise inventory misrepresentation") and that his role with TES was essentially a sales broker rather than a business development consultant ("the consulting service misrepresentation"), and what Stephens had believed was a matching process between client and franchise really amounted to training in how to sell franchises by understanding the clients' psychology ("the matching service misrepresentation"). He asserted that he was trained to place the interests of the

franchisors above the success of the clients, and was not trained to follow the clients after they purchased franchises ("the best interest of the clients misrepresentation").  Stephens further alleged that TES, by relying on a discredited U.S. Department of Commerce Survey, misrepresented that franchising was a significantly safer investment than starting a new business ("the franchise safety misrepresentation").  Finally, Stephens argued that TES misrepresented how Stephens could make money from this venture when it stated that he could collect monthly fees for coaching and mentoring, processing, and franchising other businesses, when in reality TES never collected such fees and expected Stephens and other "consultants" to derive income only from placement payments when a client opened a new franchise ("the sources of income misrepresentation").  See Stephens Post-Hearing Brief, Pl. Ex. 8, at 8-26.

The arbitrator rejected these contentions, ruling:

> The Respondent, Barry Stephens, testified sincerely and truthfully that he read and understood the terms and conditions of the Uniform Offering Circular and of the Franchise Agreement when he signed them.  Mr. Stephens is an experienced business man with sufficient education and business acumen to make an independent judgment as to his undertaking with TES Franchising LLC.  He was President of his own distribution company and a former CEO of another.  The fact that he now claims that he misunderstood the intention of the TES Franchise business or that he was not morally and ethically in accord with the general belief system of the TES Franchise business is not the fault of the Claimant.
>
> There was substantial testimony and significant proof

3

> in the record to indicate that the franchise system or
> product sold by the Claimant is a workable product and
> that other Franchisee's [sic] have had success in
> purchasing and using the product and services of the
> franchise system.
>
> Although the Respondent has submitted substantial
> arguments and well prepared briefs in law, none of the
> claimed misrepresentations are material, or
> significantly misleading, as to have caused the damages
> that Mr. Stephens claims.

Award of Arbitrator, Pl. Mot. to Vacate, Ex. 12, at ¶¶ 13-15.

Stephens now argues that this award should be vacated because the arbitrator manifestly disregarded the law in applying CUTPA and the Florida Franchise Act, and was "evidently partial" in rendering the award. Pl. Mem. in Support of Mot. to Vacate [Doc. # 41] at 11.

## II. Standard

"It is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003). The Federal Arbitration Act ("FAA") permits vacatur of an award:

> (1) where the award was procured by corruption, fraud,
> or undue means;
> (2) where there was evident partiality or corruption in
> the arbitrators ...
> (3) where the arbitrators were guilty of misconduct in
> refusing to postpone the hearing, upon sufficient cause

4

>    shown, or in refusing to hear evidence pertinent and
>    material to the controversy; or of any other
>    misbehavior by which the rights of any party have been
>    prejudiced; or
>    (4) where the arbitrators exceeded their powers, or so
>    imperfectly executed them that a mutual, final, and
>    definite award upon the subject matter submitted was
>    not made.

9 U.S.C. § 10(a).

"'[E]vident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." <u>Morelite Constr. Corp. v. N. Y. City Dist. Council, Carpenters Benefit Funds</u>, 748 F.2d 79, 84 (2d Cir. 1984). "The burden of proof falls on the party claiming bias to demonstrate that it existed." <u>InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG</u>, 373 F. Supp. 2d 340, 348 (S.D.N.Y. 2005).

In addition to the factors under 9 U.S.C. § 10(a), an arbitration award may be vacated if it exhibits manifest disregard of the law. <u>See</u> <u>Wallace v. Buttar</u>, 378 F.3d 182, 189 (2d Cir. 2004). "[M]anifest disregard of law as applied to review of an arbitral award is a severely limited doctrine," applicable only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." <u>Id.</u> (internal citations and quotation marks omitted).

>    <u>An arbitral award may be vacated for manifest disregard
>    of the law only if a reviewing court finds both that
>    (1) the arbitrators knew of a governing legal principle</u>

<u>yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case</u>. We have emphasized that an arbitral panel's refusal or neglect to apply a governing legal principle clearly means more than error or misunderstanding with respect to the law. <u>A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law</u>. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.

<u>Id.</u> at 189-90 (internal quotation marks, citations and alterations omitted) (emphases added). Thus, a Court may use manifest disregard of law to vacate arbitral awards "only in the most egregious instances of misapplication of legal principles." <u>Id.</u> at 190. "In view of the stringent nature of these governing principles, it is hardly surprising that the Second Circuit has repeatedly emphasized the truly formidable burdens facing a party who wishes to challenge an arbitral award on manifest disregard of the law grounds." <u>Success Sys., Inc. v. Maddy Petroleum Equip., Inc.</u>, 316 F. Supp. 2d 93, 100 (D. Conn. 2004) (collecting cases).

**III. Discussion**

    **A.   Application of CUTPA**

Stephens argues that the arbitrator manifestly disregarded the law under CUTPA[1] because he required Stephens to prove that

---

[1] The CUTPA statute provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.

6

he reasonably relied on TES's alleged misrepresentations, where individual reliance is not an element of a CUTPA claim.  As both parties agreed[2] in their post-hearing briefing to the arbitrator, the Connecticut Supreme Court has established the following three-part test to determine whether a representation is deceptive in violation of CUTPA: "First, there must be a representation, omission, or other practice likely to mislead consumers.  Second, the consumers must interpret the message reasonably under the circumstances.  Third, the misleading representation, omission, or practice must be material--that is, likely to affect consumer decisions or conduct."  Caldor, Inc. v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009, 1013 (Conn. 1990), cert. denied, 498 U.S. 1088 (1991) (citing Figgie Int'l, Inc., 107 F.T.C. 313, 374 (1986)).

   The arbitrator concluded that "none of the claimed misrepresentations are material, or significantly misleading..." Award of Arbitrator, ¶ 15.  He also reasoned that "Mr. Stephens is an experienced business man with sufficient education and business acumen to make an independent judgment as to his

---

Stat. § 42-110b(a).

   [2]TES, citing the correct legal standard, argued in its post-hearing brief that "[i]n a case of a single individual's CUTPA claim only proof of actual reliance should be viewed as adequate proof of the required materiality of the alleged misrepresentation."  Proposed Findings of Fact and Post-Hearing Memorandum, Pl. Ex. 9, at 30.  The arbitrator did not specifically address this argument.

7

undertaking with TES Franchising LLC." Id. ¶ 13. Stephens argues that this explanatory statement in Paragraph 13 must be interpreted to mean that the arbitrator held him to the additional, higher standard of individual reasonable reliance, rather than the CUTPA standard of a reasonable likelihood that consumers would be misled. The Court disagrees. The arbitral award, which was not requested to be a reasoned award, references consideration of the business circumstances at issue here, i.e., TES's representations are aimed at businesspeople interested in purchasing a franchising business, and Stephens is a such a businessman. It further concludes that TES's representations were neither significantly misleading nor material "as to have caused the damage that Mr. Stephens claims," i.e., his decision to purchase. This summary of factual findings showing absence of likelihood to mislead and immateriality to the franchise purchase decision does not purport to add an additional element of individual reliance. Whether plaintiff himself, as a "consumer," reasonably interpreted TES's representations is some evidence of the tendency of the representations to mislead consumers like himself.

Stephens has not shown that the arbitrator in this case "knew of a governing legal principle yet refused to apply it or ignored it altogether." See Wallace, 378 F.3d at 189. Here, the arbitrator considered all three components of a CUTPA claim --

8

the misleading nature of the statements, the reasonableness of their interpretation, and their materiality -- and determined based on the evidence adduced at the hearing that Stephens had not proved his CUTPA claim.  That other factfinders could have reached a different conclusion is a far cry from "the most egregious ... misapplication of legal principles," id. at 190, required to vacate an arbitration award for manifest disregard of the law.[3]

### B.   Application of Florida Franchise Act

The Florida Franchise Act provides, in part: "It is

---

[3]Stephens also argues that the arbitrator ignored evidence he introduced at the arbitration in support of his CUTPA claim. Plaintiff's arguments essentially concern inferences to be drawn from the evidence, not facts that were disregarded (i.e., that the "Franchise Inventory Misrepresentation was a serious misrepresentation to the general public...," that TES's offer of incentives to place clients with certain franchises indicates that TES franchisees were not supposed to act in the best interests of the clients, and that TES intended to mislead franchisees by republishing the Commerce Department Survey). See Pl. Mem. in Support of Mot. to Vacate at 15-16.  Even if plaintiff could point to actual facts ignored by the arbitrator, there is some authority suggesting that even "manifest disregard of the evidence" is not a legal ground for vacating an arbitration award.  See Success Systems, 316 F. Supp. 2d at 98.
     Stephens further argues that the arbitrator's award "condones a violation of public policy," though he expressly disavows "that the award itself violates public policy."  Reply Br. [Doc. # 44] at 5.  Thus the policy violation Stephens claims is not the arbitrator's award, and "condoning" such violation by an award in TES's favor does not constitute a public policy exception to enforcement of contractual agreements.  Cf. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42 (1987) ("A court's refusal to enforce an arbitrator's award ... because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.").

unlawful, when selling or establishing a franchise or distributorship, for any person... Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship...." Fla. Stat. § 817.416(2)(a). Stephens contends that the arbitrator misapplied this law because TES misled him as to the likelihood of success of his franchise, particularly through use of the discredited Department of Commerce Survey, reprinted in an article that TES gave Stephens. See Pl. Mem. in Support of Mot. to Vacate at 17-19; Ashman Article, Pl. Ex. 14.  Stephens also argues that, contrary to defendants' argument to the arbitrator, his franchise agreement, which contained a disclaimer of warranties,[4] did not disclaim any representations concerning the "prospects or chances for success" of his franchise.  Id. at 18.

The arbitrator made no specific finding as to the effect of any contractual disclaimers on Stephens' Florida Franchise Act or CUTPA claims, but instead found more generally that the representations TES made, which included use of the challenged article, were not significantly misleading, as the product or

---

[4]The agreement, which Stephens signed, states that Stephens acknowledges that "[n]o representation has been made by [TES] (or any employee, agent or salesman thereof) and relied upon by Consultant Franchisee [Stephens] as to any future or past income, expenses, sales volume or potential profitability of the business franchised hereby, or any other business franchised by Franchisor." Consultant Franchise Agreement, Pl. Ex. 26, at § 24.01(a).

system sold "is a workable product and ... other Franchisee[s] have had success...." Award of Arbitrator ¶ 14. Stephens' disagreement with the arbitrator's conclusion is relitigation of the arguments raised and rejected at the arbitration hearing, and does not create a basis for vacating the arbitrator's award.

### C.   Evident Partiality

In support of his claim that the arbitrator displayed "evident partiality" toward defendants, Stephens argues that the arbitrator manifestly disregarded the law and the evidence and phrased the award decision "as an advocate, not as a neutral party." Pl. Mem. in Support of Mot. to Vacate at 20. The Court has rejected Stephens' first two arguments, see supra at 8-10 & n. 3. The Court also finds no basis in the language of the arbitrator's award to conclude that the arbitrator was partial toward defendants. Stephens argues that the arbitrator deliberately misstated his contentions in stating that Stephens "now claims that he misunderstood the intention of the TES Franchise business," Award of Arbitrator ¶ 13, whereas "Stephens very emphatically and consistently claimed that the TES Parties misrepresented the nature of the TES business to him, not that he 'misunderstood' any of those representations." Pl. Mem. in Support of Mot. to Vacate at 20. Since a "misunderstanding" may be the flip side of a "misrepresentation," the award's language simply reflects the arbitrator's conclusion that Stephens had not

11

proved that TES made material misrepresentations to him.  It is not a reflection of any partiality against Stephens himself, much less a showing of evident partiality required to set aside an arbitration award.  Cf. Morelite, 748 F.2d 79, 84 (2d Cir. 1984) (vacating arbitral award where arbitrator was the father of the President of an international labor union, a district of which was party to the arbitration).  Stephens makes no claim that Attorney De Barbieri had a prior business or personal relationship with either party, or had any personal interest in the outcome of this matter.  See Lucent Techs., Inc. v. Tatung Co., 379 F.3d 24, 31 (2d Cir. 2004) (refusing to vacate arbitration award where arbitrator previously served as expert witness for one party, but the relationship had concluded prior to the arbitration and arbitrator "had no interest in the outcome of the arbitration.").

Therefore the Court finds that Stephens has not met his burden of demonstrating "evident partiality" on the part of the arbitrator in this matter.

**IV.  Motion for Rule 11 Sanctions**

Defendants move for sanctions against Stephens under Fed. R. Civ. P. 11 on the grounds that: plaintiff has mischaracterized the arbitration award; plaintiff frivolously claimed that an arbitration award condoning a violation of public policy, but not violating public policy, may be vacated; plaintiff frivolously

claimed that an arbitrator's manifest disregard for the facts is a basis for vacating an arbitration award; and the purpose of plaintiff's motion to vacate "was to harass and/or needlessly increase the cost of litigation." Def. Mem. of Law in Support of Mot. for Sanctions [Doc. # 47] at 3-4.

### A.  Standard

Rule 11 provides that by presenting a pleading, motion, or other paper to the Court, the presenting attorney is certifying, in relevant part, that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

Fed. R. Civ. P. 11(b). If the Court determines that these provisions have been violated, it may, but is not required to, impose an "appropriate sanction." Fed. R. Civ. P. 11(c); Perez v. Posse Comitatus, 373 F.3d 321, 325-26 (2d Cir. 2004).

In evaluating a Rule 11 motion, the Court must "resolve all doubts in favor of the signer" of the challenged pleadings, whose "conduct is to be judged as of the time the pleading or other paper is signed." Oliveri v. Thompson, 803 F.2d 1265, 1274-75

(2d Cir. 1986), <u>cert.</u> <u>denied</u>, 480 U.S. 918 (1987).  The test under Rule 11 is objective, and sanctions shall be imposed only "when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper."  <u>Id.</u> at 1275 (citing <u>Eastway Constr. Corp. v. City of N.Y.</u>, 762 F.2d 243, 254 (2d Cir. 1985)).  "With regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" <u>Storey v. Cello Holdings, LLC</u>, 347 F.3d 370, 388 (2d Cir. 2003) (quoting <u>O'Brien v. Alexander</u>, 101 F.3d 1479, 1489 (2d Cir. 1996)).

Sanctions may not be imposed without notice to the party to be penalized.  <u>Id.</u> at 389.  "Moreover, when Rule 11 sanctions are initiated by motion of a party," the Rule "gives the subject the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed."  <u>Id.</u> (citing Fed. R. Civ. P. 11(c)(1)(A), which provides a 21-day safe harbor between service of the motion and filing with the court).

**B.   Discussion**

Defendant's motion fails to demonstrate that defendants gave plaintiff advance notice of their motion for sanctions and afforded plaintiff the required 21-day period to consider withdrawing his motion to vacate the arbitration award. Nonetheless, plaintiff's opposition to the motion for sanctions

14

takes the position that he stands by his arguments in favor of vacatur, see Pl. Reply [Doc. # 48], and thus the Court will assume that even if he had been given notice, he would not have withdrawn his motion.

However, the Court in its discretion declines to impose Rule 11 sanctions on plaintiff.  First, plaintiff's reading of the arbitrator's award is not wholly unsupported, particularly as the award is only in summary form.  While the Court interprets Paragraph 13 of the arbitrator's award to rule on the objective reasonableness of reliance on TES's claimed misrepresentations, the arbitrator did not explicitly state whether he was making a finding of objective or subjective reliance, and Stephens did not "misquot[e]" the arbitrator outright as defendants contend. Second, Stephens' argument that the arbitrator "condoned" a violation of public policy, while not a recognized independent ground for vacatur, and while repetitious of plaintiff's manifest-disregard-of-CUTPA claim, could be seen as grounded in CUTPA's purpose of preventing consumer fraud in violation of public policy.

Third, plaintiff advanced his argument that the arbitrator manifestly disregarded the facts in evidence both as a separate ground for vacatur and as a ground for finding "evident partiality," and although the Court disagrees on the circumstances presented in this case, it does not conclude that

15

manifest disregard of the facts by an arbitrator never could be a basis for finding an arbitrator's decision impermissibly partial.

Finally, the Court recognizes that this dispute has been protracted and highly contentious throughout its various phases. However, the Court does not find that plaintiff's sole purpose in bringing the motion to vacate was to harass the TES parties or needlessly increase their costs.

## V.  Conclusion

Accordingly, the Plaintiff's Motion to Vacate Arbitration Award [Doc. # 40] is DENIED and Defendant's Motion for Sanctions [Doc. # 46] is DENIED.  The Clerk is directed to again close this case.

IT IS SO ORDERED.

/s/
_____
JANET BOND ARTERTON
United States District Judge

**Dated at New Haven, Connecticut, this 11th day of July, 2006.**